May it please the Court, my name is Kristen Sarf and along with my colleague Charda Enslin, I represent Officer Benjamin Bauer. I'd like to optimistically reserve three minutes for rebuttal. On behalf of Officer Bauer, we ask the Court to reverse the District Court's denial of summary judgment on qualified immunity grounds for both the seizure and forced components of Ethan Marks' Fourth Amendment claim. This case occurs amongst unprecedented civil unrest in Minneapolis. Even amongst the unprecedented civil unrest that occurred in Minneapolis in May 2020, the incident that brought Officer Bauer to meet Ethan Marks was unique. Internally, the protests had become violent. Someone was stabbed, a protester was stabbed, a protester was being held at gunpoint, and another protester had been reportedly struck in the head with a baseball bat. After passing through a crowd that outnumbered Officer Bauer by conservatively hundreds, which included throwing rocks, bottles, and other objects, he arrived at the scene. The video from 9 News Australia equates the scene to a modern-day war zone, and it shows officers getting out of their vehicles, yelling, back up, using chemical irritant, and gesturing for the crowd to move back. By the time Officer Bauer established a perimeter around the downed protester with a baseball bat to the head injury, he had learned over the radio that protesters were attempting to set up a barricade down the street to prevent officers from leaving the area. As he faced the looted target, he heard, back up, bitch. When he turned, unbeknownst to Officer Bauer, Ethan Marks had taken issue with the fact that Officer Pabuda, another officer that was establishing the perimeter, had stopped his mom from entering to deal with the injured protester. He appeared to be upset by the fact that Officer Pabuda had told his mother to back up, and so he mirrored the language, back up, bitch. In the four seconds in between that threat and the release of the less lethal launcher, this occurred. Ethan Marks is shown... I like how we call that less lethal, but it's still certainly lethal. Any projectile that can fracture your orbital, take out your eye, is capable of killing you at that range. You would agree with that? No, not necessarily, Your Honor. You don't think so? I mean, if you just think about a blow to the eye that fractures the orbital is capable of pushing the eyeball into the optic nerve, which enters into the frontal lobe of your brain, that causes death. I mean, you could kill a guy through the eyeball with a bobby pin. Your Honor, it does depend upon the circumstances, and it depends on the individual. Here, we are asking for qualified immunity not only on the objectively reasonable and not only on whether or not a seizure exists, but on whether or not it was clearly established. And so I appreciate Your Honor's perspective, but I point to the case of White v. Jackson, which is this Court's opinion in 2017. It arises out of the Ferguson protests. There were a series of plaintiffs in that case. Plaintiff Harris alleged that he was struck in the face with a rubber bullet because he stayed by to film the protest. Plaintiff Matthews alleged that he was hit by multiple beanbag rounds and rubber bullets when he continued in advance on a skirmish line despite being ordered to do so. And every time the Eighth Circuit referred to the use of those less lethals, it referred to them as nonlethal projectiles. On page 1073 of that case, White v. Jackson, when Matthews kept walking toward the police line, Detective Patterson yelled that he was under arrest. Matthews nevertheless continued advancing towards the police line. At this point, Jackson yelled, less lethal, less lethal, less lethal. He then fired nonlethal projectiles at Matthews. Matthews later testified that he was hit by about five beanbag rounds and rubber bullets. Clearly established, that's a gray area at a minimum. Immediately after less lethal, the Eighth Circuit is saying it's nonlethal. And that's mirrored in Dundon v. Kirchmeier. In the underlying denial of the preliminary injunction in Dundon v. Kirchmeier, the court found that it was no reasonable juror could find that the level of nonlethal force used by law enforcement officers during the chaos could be deemed unlawful. In that case, there were rubber bullets and lead-filled beanbag rounds. The Eighth Circuit in the underlying North Dakota court said twice referred to that force as nonlethal. The Eighth Circuit in per curiam said that was a well-reasoned decision. So the question, even if we go beyond the objectively reasonable, is you put Dundon in front of Officer Bauer, and you put White v. Jackson in front of Officer Bauer, where this court and other courts say less lethal, and then immediately follow it with nonlethal projectile. Does it make any difference that it was a point-blank range such that people, just bystanders, said, really, dude? Point-blank range? And then the officer's response is, yeah. Right? That's what happened. That's what the video shows, right? Yes. And then immediately afterwards, Officer Bauer yells back up to everybody. But no, it doesn't, Your Honor. And here's why. The district court found, as a matter of fact, that he, that Officer Bauer fired the less lethal launcher at either 5 to 10 feet. Five feet is the minimum safe distance. Ten feet is the beginning of the optimal range. So the plaintiff's expert in this case says, if you fire a less lethal launcher from five feet away, and it hits the torso or below, it's non-deadly force. So what we're dealing with is a question of whether, is a question of whether or not Officer Bauer could have considered this to be deadly force. What about the evidence on the fact that, like, I think it was called Zone 3 or whatever it was, where they say if you do it above the stomach area, like chest, you know, center mass or head, that that can be lethal. That's why they do that as a last resort. It seems like that would suggest that Judge Erickson's right. It can be deadly. I'm not saying that there couldn't be circumstances. The record doesn't show a single instance of anyone ever dying from being struck in the face. Certainly Plaintiff Harris in White v. Jackson wasn't. But what the policy says, not case law, what policy says, is that you aim for Zone 3 if the force is escalating to deadly force. Not that you need deadly force authorization, but it has to be escalating towards that. And so I ask you to look at the cases that the District Court and Mr. Marks have relied upon. Not a single one is before May 2020. Not a single one involves less lethal projectiles, nor a description of it as a lethal force. None of them involve felony-level offenses, including the grabbing of the riot baton, which is indisputably shown on the video. So we've got officers being trapped by protesters that have become internally violent. We've got in four seconds, four seconds between backup bitch and the deployment of the 40-millimeter less lethal launcher. We have shoving, which causes the police camera to come off. We've got a punch to the head, which disturbs the riot helmet. And we've got the grabbing of the baton, which the declination letter from Hennepin County says that from the perspective of an officer, they could have considered that to be Mr. Marks grabbing the baton. And within those four seconds, a half of a second is Officer Bauer raising the less lethal launcher. And .23 seconds beforehand, Ethan Marks drops. There's no case law that tells an officer that they need perfection. .23 seconds, it's half of a half of a second. None of the cases that the plaintiffs put forward or the district court puts forward puts Officer on Bauer that he needs perfection in the face of violence from a flawed man who decided to be the only person who went hands-on with officers . So we go back to the most recent development of case law from this court. Now, let me just go back to that for a second. As I understand it, all the experts, including yours, have indicated that the level of pushing and shoving and violence here did not justify lethal force. Correct. And there's also evidence that pointing and using this less lethal weapon, as you refer to it, at a person's head is lethal force. It's escalating, yeah. So doesn't that say, okay, if that's the case, then doesn't it become an issue of whether or not he was aiming for his head? And if he was aiming for his head, I don't know, where does that leave us? Half of that equation is if he's not pointing for the head, it's not deadly force. Every expert, everybody agrees to that. So hit the torso and blow. So that leads me to the question, is that a fact dispute that precludes us to even have jurisdiction over this issue? Absolutely not. Scott V. Harris says you have jurisdiction over what's shown on the video. You have a stabilized video from expert Paris Ford that shows. But that's just one expert. You've got experts on the other side who say the opposite. No, no, absolutely not. The other experts don't make any mention of Ethan Mark's movements. And that's why there's not a fact dispute. We don't dispute that the launcher is going up. We don't dispute that. You can consider that admitted and the district court found that. But that's only half the equation. The line of fire is depending upon where the subject is. So as the launcher is going up, Ethan Mark's is going up. He's going up and over that big pipe that's on the ground. And what the district court never addresses is Ethan Mark's movement. And all of that is shown on the video. It's shown on slowed down, stabilized video with a red line that shows as the Leslie launcher is raising, Ethan Mark's is raising. And then .23 seconds in that half a second of raising, Ethan Mark's drops. There's no dispute about that, that he drops. That's on video. And so the question is, amidst this chaos, is an officer supposed to have .23 seconds reaction time? There's no case law that expects that. It speaks to the fact that this was a rapidly evolving tense circumstance. But back to the seizure argument in the 13 seconds before my optimistic rebuttal. Dundin v. Kirchmeier says that if you use a Leslie throw launcher to disperse a crowd, it's not a seizure. And that's the question too factually, isn't it? Was it an attempt to disperse and repel? Or was it an attempt to stop and seize someone who was in the course of assaulting an officer? There's a different review that will apply. The undisputed facts are he doesn't say you're under arrest. He doesn't chase after Ethan Marks. Ethan Marks leaves of his choosing where he wants to go. He's not encircled. There's no pursuit of him in any capacity. And what the evidence shows, what the district court found as a matter of law, or a matter of fact, is Officer Babuda and Officer Bauer are perimeter officers. They're just like the skirmish line officers. They're just like the barricade officers. And so those are undisputed facts. So clearly established again, what case are they putting in front of you or the district court put in front of you that says underneath those circumstances that's a seizure? Because under Dundon, dispersing a crowd, not a seizure. Under Martinez v. Sass, repelling isn't a seizure. And under Torres, using force for any other purpose than to restrain is not a seizure. So under any concept of the cases, whether or not you're going before 2020 or after 2020, it's not clearly established that Officer Bauer seized Ethan Marks when he used force and Ethan Marks ran away without pursuit, without order, and the direction that he wanted. I'll keep my one minute and 20 minutes unless you have questions. Thank you. Ms. Wiesner. Good morning, Your Honors, and may it please the Court. Greta Wiesner for the plaintiff appellee, Ethan Daniel Marks. On this narrow interlocutory appeal from the district court's denial of qualified immunity to appellant Officer Bauer, the facts and factual disputes have been laid out by the district court and are not subject to appeal. Based on those facts and viewing the record in the light most favorable to Ethan, this Court should affirm for two reasons. First, the district court correctly found that Officer Bauer used deadly force. Every reasonable officer, including all of the Minneapolis Police Department witnesses, the defendant, and his experts all knew that shooting someone in the eye with a less lethal launcher was deadly force, and that deadly force was unjustified. Second, even if non-deadly, using significant force that ruptured Ethan's eye globe, detached his retina, broke bones in his face, caused a traumatic brain injury, and has left him in significant daily pain was unreasonable and vastly disproportionate to his conduct. I'd like to begin by addressing a few of my colleague's points from her argument. The first is that the video in this case is both highly controverted and a matter that must be interpreted by the jury. The Scott v. Harris exception does not apply here. That is misplaced. The district court did not accept Ethan's versions of the facts blindly. It viewed that video and found that it was ambiguous. I get that, and if you look at the video in isolation without all of the other videos, but if you take a look at the three and a half hours of videos or whatever it is that's in the record here, I mean, there's a lot of contextual video before that demonstrates a completely chaotic situation. Officers at great risk, officers being put into a situation that was hazardous, people throwing bricks and rocks the size of bricks, people assaulting people, a crowd that had engaged in all sorts of unlawful activities and destruction of property the night before, and that that very night would become even more out of control. And if you look at all that and you look at the video where they're driving the officers in there and they don't want to be there and they have all the hard marks of terrified men about being sort of in a really dangerous situation with no support, they can't get an ambulance in there, they can't get backup in there, they have only one way of egress in and only one way of egress out, and all of that seems to be mostly ignored by Judge Montgomery, because Judge Montgomery focuses in on the minute and a half right surrounding the shooting. Is that really appropriate? Your Honor, the district court does set the parameters of the facts on appeal, and whether or not her contentions or versions of the facts are appropriate is not subject to appeal. Well, it is if we think that the video, and I don't think that means just the two minutes in isolation, but the video on the whole as to whether force was reasonable or not. I mean, if it's contradicted by that, we do have a line of cases that say that for whatever reason, whether good or bad, that we get to sort of substitute our own version of what our eyes are telling us on the video. Your Honor, those details about the protests may be undisputed, but they're also irrelevant. The relevant facts are what an officer in Officer Bauer's position would see and observe at the time he used force on Ethan. And Officer Bauer cannot use deadly force on Ethan because other people in other areas are throwing things or rioting. And looking at the context of this incident, what the video shows is a group of people beckoning to Officer Bauer for help, assisting, setting up a perimeter. No one throwing things or rioting. Officer Bauer cannot use deadly force on Ethan based on other people's conduct. Suppose there had been, though. Suppose that Officer Bauer had been hit, and this showed on video half an hour before. Not by your client, but by somebody else. And then he reacts to this, you know, to your client and the interaction with the other officer. We can't take into account that this officer was hit by somebody else a half an hour earlier. And it's on video. Not in using force on Ethan. If somebody else threw something at Officer Bauer, Officer Bauer would have to make an individual determination vis-a-vis that individual what force was reasonable or justified. But doesn't that take the context out? Which is, it is one thing. It is one thing for this to happen with just three people there. Right? It's one thing where there's just three people and you shoot the nonlethal launcher. It's a whole other thing when you're in the middle of a riot situation or a protest situation that has turned violent. We can't consider that this was a protest and that it turned violent? Those facts would be part of the context, but it would not be a part of Officer Bauer's decision for what force was reasonable. Nor was it. Officer Bauer stated in his IA statement that he was not using the less lethal force for a dispersal effort, and that he was apprehending Ethan, in his own words, to stop an assault on Officer Pobuda, which places this clearly within grounds for a Fourth Amendment seizure and also explains the relevant context. And importantly, even considering all of the facts at play at this protest area, Officer Bauer has conceded that deadly force was not justified, nor could he argue otherwise. He conceded during oral argument below, when asked by the district court, was lethal force justified? Council responded, we are not arguing that. So Council's refuge on appeal is that Officer Bauer didn't have a case to know that a less lethal launcher was deadly force. But it's clearly established that deadly force is any force which creates a substantial risk of causing serious bodily harm or death, and the touchstone of qualified immunity is notice. Officer Bauer was on notice that his less lethal launcher could be used as a deadly force tool. What do you do with White v. Jackson? I looked at all the cases, every case, you know, that was cited by each side, and the one that's clearly the closest, I think. Now, maybe you can argue that there wasn't – it wasn't aimed at a lethal – lethal area, but White v. Jackson is awfully close, and there it said no constitutional violation at all. Your Honor, I would disagree that White v. Jackson is particularly close, especially given that White v. Jackson, he was not struck in any deadly force zone. He was struck, I believe, in the lower extremities. There was no allegation that he was struck in an area that would be deadly force. But otherwise, the facts – as I've mentioned, otherwise, the facts are pretty close. I would, again, respectfully disagree, Your Honor. In that case, the person was shot, and in this case, Ethan was moving backwards at the time force was used on him. He was not armed, and he was given no direction. But he just – he just struck an officer. I mean, like, if anything, this case is arguably worse than White v. Jackson. Because, yeah, exactly. He lays hands on him, then he takes a swing at him, and the fact that he's shot in the head is most likely due to the fact that he's falling on his buttocks at the time that the – you know, in that split second, and that's – everybody kind of recognizes that there's, you know, 20 hundredths of a second or 30 hundredths of a second, the shot's fired. And at that point, that just happens to be the time that, because of the deployment of the stick, he's been knocked kind of over teakettle and is going back on his buttocks, and the round hits him in the head, right? So there's evidence from which you could conclude that the round was fired perhaps slightly higher than it should have been, but not the use of deadly force directed entirely at his head. Your Honor, there is plenty of evidence from which a jury could conclude that the round was aimed at Ethan's head, and evidence that the district court set forth, including the short distance between Officer Bauer and Ethan, the video showing where the round – or where the Leslie-throw launcher was pointed. There was Officer Bauer's aptitude with this weapon. He is a rated marksman, and he claims that he is able to hit a person from 50 feet away at night, scaling a fence in the buttocks. And there's also his own experts saying that the launcher was never pointed at Zone 1 or Zone 2. From that evidence, a jury could readily conclude that this was an intentional deadly force shot. I think that's your strongest argument, quite frankly, which is why I'm trying to focus on that. We've got to figure out if that's enough to distinguish it from White versus Jackson. But some of the other atmospherics here, there's some things that make it worse. There's some things, as you point out, that kind of make it a little bit better. But the big distinguishing characteristic is where the projectile hit, I think. Your Honor, I would add to that also this timing issue. And Bauer would like to characterize the split second as being in his favor, when actually choosing to shoot within a split second is acting unreasonably fast. And this Court explained as much in Dewey Noe v. Storley from Your Honor Judge Molloy, finding that an officer acted unreasonably in shooting within a split second without evaluating the circumstances. I would also direct Your Honors to a case that I think is much more apt than White versus Jackson. Jackson versus White? It's another Jackson. Jackson versus Stare from Your Honor Judge Erickson. In that case, it was another less lethal weapon, and the Court found that tasering an unruly but unarmed person a second time almost immediately after the first without a warning and without giving that person time to come into compliance was unreasonable. And the same is true here. There was enough time for a person in a neon vest to come in between Officer Pobuda and Ethan. For Officer Pobuda to determine Ethan was no longer a threat and no force was necessary. Suppose, though, that there was a gun being pointed at the other officer, and then we have all the same facts here. Would the officer need to say, Okay, let's wait. Let me assess the situation. I'm going to do a brief investigation. Now I'm going to shoot him. Because if that's true, then the other officer could be dead by the time you think about it. And that's a very important distinguishing factor, that Ethan was unarmed here. There is no basis to conclude that Ethan posed the type of immediate threat that justifies deadly force. Well, and I was just going to ask, though, does the punch, though, make this more analogous? That's not necessarily deadly? Well, maybe if you hit somebody in the head, but maybe not with a riot helmet on. But still, I mean, does that make it more analogous to the gun situation? No, Your Honor, because Ethan had been pushed back already. Officer Pobuda, even in the midst of that tussle, did not think deadly force was justified. He thought a push backwards was sufficient force. And then he understood that the threat had dissipated. So it's that push backwards that would distinguish this case. Enough time had passed. The threat had dissipated. Or at the very least, a jury needs to determine whether Ethan posed a sufficient threat that this level of force would be necessary. And to return to Your Honor Judge Erickson's point about the moving up and down, the sudden drop theory is just another question for the jury. That's a question of proximate cause. Officer Bower argues he's not the proximate cause. Ethan's sudden drop is. But as the district court rightly explained, there is sufficient or the video here is inconclusive on that point. It doesn't even show Ethan's head. It's a video that does not have his head in it. And contrary to counsel's argument, it is a hotly contested video. It is far from undisputed. It is a video that has been interpreted, stabilized, and manipulated by an expert, an expert that Ethan moved to exclude no less. And it does not prove dispositively that the sudden drop theory would have any bearing. And related to that, the sudden drop theory is really just another characterization of Officer Bower's argument about his subjective intent, which is irrelevant for three separate reasons. First, the Fourth Amendment inquiry is objective, and Ethan was struck in the eye. Officer Bower cannot treat this as a case that it is not and say that if he had shot Ethan in the stomach, that would have been reasonable. Second, his own version of events is that he shot the center mass. His expert used an area, you know, 8 to 10 inches below the eye. That's still a deadly force shot. It is in Zone 3. Officer Bower was aware that's a deadly force shot. And finally, as I discussed previously, it's just a fact question. There's a question of fact for the jury about his subjective intent. And that fact question puts us squarely in the deadly force zone. And under this Court's cases in Craighead v. Lee, Your Honor, Judge Malloy's decision in Capps v. Olson, it's clearly established that a person who does not pose a significant threat of serious physical injury cannot be subjected to deadly force. This can be a very short opinion because if this is a deadly force case, Officer Bower has conceded that he must lose. And finally, there is no need to identify a less lethal launcher-specific case, given the commonly and widely accepted definition of deadly force, Bower's own deposition testimony that he would never take a shot in the head unless it was deadly force, and probably most tellingly, his own expert witness who testified, if Bower shot Ethan in the head, he should have been fired and made to walk home. Nothing could be more clearly incompetent than that. And last, the Supreme Court in Torres v. Madrid outright rejected the idea of a novel weapons exception to the Fourth Amendment, explaining that the Fourth Amendment preserves liberty interests with respect to weapons both old and new. Taken to its logical conclusion, Officer Bower would say that he could walk up to Ethan and shoot him through the temple, and it would not be unreasonable, nor would it be deadly force, because a court hasn't told him so. That flies in the face of the Constitution and common sense. Officers do not get to act with impunity every time a new weapon is invented until a court tells them otherwise. With that, Your Honors, we respectfully ask that this Court affirm the decision of the District Court below. Thank you. Thank you. Ms. Saar, for your rebuttal. You may. White v. Jackson is on point, and contrary to what my friend just told you, that case involved someone being struck in the face with a rubber bullet. That force was described as nonlethal force. And so it's not enough for Mr. Marks to simply say that Officer Bower knew that using force that would be deemed substantial, potentially deadly, independent, when you have a Circuit President saying something different. At a minimum, that is a gray area. The plaintiffs are attempting to walk away from the totality of their circumstances because they want to tell you that Officer Bower had endless time to respond. But that is why, when the District Court watched most of the video, without the sound on, it missed key totality of circumstances, facts, including that there was a barricade being brought up, which meant that time was of the essence. The person that was on the ground in front of the looted target with a baseball bat, injury to the head, needed to get to the emergency room. He didn't have endless time. They had to get out of there for their own safety and for the injured protesters. Can I ask one question? Yeah. What, if anything, do we make of Officer Bower's statement that he was not trying to disperse Mr. Marks, but actually was effecting a seizure on your dispersal argument? My time is up. You may ask. I have many thoughts on that question, Your Honor, and I'll try to be judicious, though. A dispersal tool is something that is used largely on a crowd, like a chemical irritant. It can be sprayed amongst everybody. A less lethal launcher targets individuals. And so when he says he's not using it as a dispersal tool, he means he's not just indiscriminately hitting people. He's targeting individuals that have committed violent acts in front of them. And so that is the distinction that's being made. So how is that any different than just arresting? Under that theory, any time you arrest somebody for committing a crime, it's a dispersal. I'm sorry? Well, you said he was just using it to stop somebody who committed a crime. Exactly. That sounds like an arrest. That's exactly what happened in Dundon, and this Court said it wasn't a seizure. Every time in Dundon or in White v. Jackson, a less lethal launcher is used, and it's deemed to be nonlethal by the Court. It's because one of the people was the person that was being individually targeted was committing a crime. They were either advancing and ignoring orders, or they were failing to disperse, or they had come to the barricade line. Every time the less lethal launcher is used on an individual to stop a crime in Dundon and White, which was objectively reasonable, and in Martin, in all of those cases, the force was used to stop a person. And because the subject who had committed the crime wasn't encircled, wasn't ordered to stop, wasn't arrested, wasn't detained, then there was not a seizure just like here. We respectfully request that you reverse. Thank you. Thank you very much.